**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CONNIE J. RAPSIN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CASE NO. 10 C 318 |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for judgment on the pleadings [20], filed by Plaintiff Connie J. Rapsin, seeking judicial review of a decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration, denying her application for disability insurance benefits ("DIB"). Plaintiff asks the Court to reverse the decision of the Administrative Law Judge denying her benefits or, alternatively, remand for further proceedings. Defendant has filed a memorandum in support of the Commissioner's decision [26], to which Plaintiff has replied [27]. For the following reasons, the Court remands this matter for further proceedings consistent with this opinion.

**I. Procedural Background**

On January 20, 2006, Plaintiff applied for disability insurance benefits, alleging that she became disabled as of September 21, 2005. See Administrative Record at 210.[1] Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on April 2, 2008, before an Administrative Law Judge ("ALJ"). R. at 24. The ALJ

---

[1] Unless otherwise indicated, all references in Sections I and II refer to the administrative record in this matter.

1

denied Plaintiff's claim. R. at 13-22. Plaintiff sought review of the ALJ's decision and the Appeals Council denied this request, leaving the ALJ's decision the final decision of the Commissioner. R. at 1-4, 9. Plaintiff now seeks judicial review of a final decision of the Commissioner of Social Security. This Court has jurisdiction pursuant to 28 U.S.C. § 405(g).

## II. Facts

### A. Background

Plaintiff, born in 1954, was 53 years old as of the date of hearing. R. at 29. Plaintiff has a high school education and worked as a bank teller from 1989 through 2005. R. at 30, 215. Plaintiff indicated that she was unable to work due to back surgery, arthritis, inability to hear with her right ear, high blood pressure, gastroesophageal reflux disease, and migraines.

### B. Medical Evidence

Plaintiff has had a history of back problems. Beginning in 1996, Plaintiff underwent a microdiscectomy at L5-S1. R. at 47, 371. In 2001, problems resumed, affecting Plaintiff's lower back, legs, and hip. R. at 371. In September 2002, Plaintiff consulted with neurosurgeon Thomas Hurley, M.D., and reported that sitting for prolonged periods, as well as other movements, increased her pain. *Id.* A myelogram showed evidence of a bulging disc at L4-5, with a well-decompressed L5-S1 region (the same area as the prior surgery), and prior treatment records showed that Plaintiff suffered from severe degenerative changes in the lumbar spine at L5-S1 that caused bilateral neural foraminal stenosis.[2] R. at 367-69. Conservative treatment did not provide significant relief, so in August 2003 Dr. Hurley performed spinal fusion surgery on Plaintiff at L5-S1. R. at 34, 359, 367-68. After the spinal surgery, Plaintiff wore a back brace and underwent physical therapy.

---

[2] Stenosis is a narrowing of any canal or orifice.

In February 2004, Plaintiff continued to have back and leg symptoms; however, she was released by Dr. Hurley to return to work on a part-time basis (three to four hours per day). R. at 366. Over the next three months, Plaintiff increased her working hours to 30 hours per week. R. at 35, 36. She continued to experience back problems and numbness in her foot, especially standing for more than four hours per day. R. at 35, 36, 365. Dr. Hurley indicated that Plaintiff's persistent numbness, especially with standing and walking, resulted from an underlying nerve injury at S1, secondary to her degenerative disc disease. R. at 365, 364. Dr. Hurley prescribed various medications, and adjusted those medications over time. R. at 359-64.

In November 2004, Plaintiff went to the emergency room. R. at 333-39. A pulmonary function study demonstrated normal spirometry and there was borderline bronchodilator response and some reduction in mid-expiratory flows. A November carotid ultrasound was normal bilaterally without any significant stenosis. R. at 292, 334. Plaintiff's provisional diagnoses were angina and shortness of breath. R. at 333, 335.

In view of Plaintiff's report of pain in both feet, in December 2004 an MRI was taken of Plaintiff's lumbar spine. R. at 283. This MRI showed surgical changes, a possible midline disc protrusion at L5-S1, and a mild diffuse posterior disc bulging at L4-L5. *Id.* Plaintiff's provisional diagnosis was lumbar degenerative disc disease. R. at 330.

Dr. Hurley saw Plaintiff in February 2005 for routine follow up of her L5-S1 posterior lumbar interbody fusion from August 2003. R. at 349-50. He noted Plaintiff's medications and diagnosed lumbar degenerative disc and hip pain. R. at 349. Dr. Hurley planned to have Plaintiff return in six months. R. at 350. In March 2005, Plaintiff went to the emergency room. R. at 327-29. The provisional diagnoses were hypertension, GERD (gastroesophageal reflux disease), and a family history of diabetes mellitus. R. at 327.

In 2004-05, Plaintiff also was having additional problems, including angina, shortness of breath, dizziness, weakness, migraines, left side paresthesias, and numbness, for which she received emergency room care and care from her primary physician. R. at 302-07, 312-39. Some of the tests performed during this period did not show significant abnormalities. R. at 289-91, 292, 293, 314, 317-18. Plaintiff's primary care physicians diagnosed conditions including hypertension, GERD, migraine headaches, and DJD (degenerative joint disease). R. at 298-99.

Plaintiff continued to have back pain. Radiological studies in June 2005, while not appreciably different from earlier studies, revealed moderate degenerative spondylosis at L5-S1.[3] R. at 295, 302. Plaintiff worked the reduced schedule of 30 hours per week until September 2005. At that point, she stopped working due to fatigue and an inability to keep up with work. She began taking Vicodin every couple hours. R. at 31, 36, 48-49. Also in September of 2005, Plaintiff presented to the emergency room complaining of some shortness of breath that began about one week prior to her visit. R. at 314-23. Her chest x-ray was negative, and Plaintiff was given an IV with normal saline and a Xanax prescription and was discharged in stable condition. R. at 318.

Pascal Bordy, M.D., examined Plaintiff on behalf of the Social Security Administration in April 2006. Dr. Bordy noted that Plaintiff was 5'1" tall and weighed 201 pounds. Dr. Bordy observed discomfort changing from a sitting to standing position, limited flexion of the lumbar spine, and an abnormal gait. R. at 353-57. An x-ray of Plaintiff's lumbar spine revealed that the lumbar vertebral alignment was intact, moderate disc space narrowing, and degenerative disc disease changes at the L5-S1 level. R. at 357. Dr. Bordy indicated that musculoskeletal examination revealed a full, painless range of motion in degrees of all joints except flexion of the lumbar spine, which was performed to seventy degrees with pain at L5-S1. R. at 354. There was

---

[3] Spondylosis is a stiffening of the vertebrae.

no heat, redness, swelling, thickening, or deformity of any joints, but there was tenderness at L5-S1. *Id.* Plaintiff's ability to bear weight was abnormal without the use of an assistance device, as Plaintiff limped. *Id.* Plaintiff had normal grip strength bilaterally, and her ability to grasp, finger, and manipulate with each hand was within the normal range. She was able to walk on toes and heels, squat, rise, and walk a tandem gait without difficultly. R. at 354. Dr. Bordy diagnosed Plaintiff with chronic L5-S1 degenerative disc disease status post fusion with hardware, intermittent sciatica, recurrent hypertension, GERD, and obesity. R. at 355.

In May 2006, Dr. Smalley, a state agency physician, reviewed the record evidence and concluded Plaintiff could perform light exertional work, with frequent climbing of ramps and stairs and balancing; occasional stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; and needed to avoid concentrated exposure to vibration. R. at 373-80. Dr. Colmey, also a state agency physician, reviewed the record evidence later in May 2006 and concluded that Dr. Smalley's assessment was reasonable. R. at 381-83.

In July 2006, Plaintiff returned to Dr. Hurley and reported that she was having more problems with her back, including a stabbing pain in the central lower back, and in the lower extremity, particularly on the left side. R. at 394, 246. Dr. Hurley noted that, despite physical therapy, Plaintiff still had persistent symptoms. However, examination revealed no pain with straight leg raising, flexion, abduction, and external rotation of either hip. Plaintiff's strength was normal (5/5) throughout all groups tested in the lower extremities. He diagnosed chronic lower back pain and recommended an MRI. R. at 394-95. He noted that if the MRI was unremarkable, Plaintiff might benefit from a new trial of physical therapy since she stated that she had given up on her current home exercise program.

An MRI taken in August 2006 of Plaintiff's lumbar spine demonstrated surgical changes related to the posterior fusion of L5 to S1, laminectomy changes at L5, and a bulging disc at L5-S1 that did not appear to be resulting in significant stenosis or foraminal narrowing. No change was seen when compared with the MRI of December 2004. R. at 396.

In September 2006, Dr. Norbury, a state agency physician, reviewed the record evidence and affirmed Dr. Smalley's assessment of Plaintiff's functional abilities. R. at 397-98.

Plaintiff's received treatment during 2007 for problems that included pain, hypertension, migraines, shortness of breath, and abdominal pain. R. at 94-95, 131-46. Plaintiff also was treated at Silver Cross Hospital multiple times for migraine headaches, uncontrolled hypertension, and other problems. R. at 98-128. Multiple diagnostic tests were administered in 2007, including MRIs of the lumbar spine, abdomen, and brain, an electromylogram, nerve conduction studies, ultrasounds, a stress test, a treadmill test, and additional testing; some of these tests were normal while others reflected abnormalities. R. at 147-154. In particular, the EMG report showed changes consistent with denervation in the mid lumbodorsal paraspinals, and an MRI of the brain showed possible chronic ischemic changes. R. at 149-50, 162.

In June 2007, Dr. Gutta examined Plaintiff. He diagnosed questionable complicated migraine and accelerated hypertension and ruled out transient ischemic attack. R. at 107. Dr. Gutta recommended an MRI and carotid ultrasounds to rule out any underlying vascular phenomena or intraparenchymal disease. *Id.* The MRI taken in June 2007 revealed essentially negative intense signal abnormalities and no abnormal enhancing mass lesions or intracranial pathology were present. R. at 171. A carotid duplex ultrasound showed neither hemodynamically significant carotid stenosis nor prominent plaque formation. R. at 172.

An October 2007 MRI of Plaintiff's lumbar spine revealed post-operative changes at L5-S1 similar to the previous study and no focal acute changes. R. at 147-48. An October 2007 electromyogram/nerve conduction studies of Plaintiff's left lower extremity and lumbosacral paraspinal area and never conduction study of the right lower extremity were abnormal because of change consistent with denervation seen in the mid-lumbodorsal paraspinals. R. at 149, 152.

In an Optima treatment note from October 2007, Dr. Schubert indicated that Plaintiff had permanent lumbosacral neuropathy, which "continues to interfere with gainful employment," and that Plaintiff needed to be on disability. R. at 95, 132. Dr. Schubert continued treating Plaintiff in 2008 for lumbosacral neuropathy, and Plaintiff testified that Dr. Schubert told her that this problem was permanent and resulted from her back problems. R. at 205-08, 36-37.

### C. The Hearing on April 2, 2008

At the time of the hearing on April 2, 2008, Plaintiff testified that she continued to take multiple medications and that she experienced pain in the lower back, that radiated down the left leg with some numbness, which was aggravated by standing and sitting. R. at 37-38, 42-44. Plaintiff estimated that she could walk, stand or sit continuously for about a half hour without experiencing pain. If she sat for more than an hour, her legs would go numb and her back would hurt. As a result of fatigue, she typically lied down during the day. She estimated that she could lift 10-20 pounds. R. at 43-46.

The ALJ found that Plaintiff could do light work, subject to certain postural limitations and a need to avoid concentrated exposure to vibrations. R. at 16. During the hearing, Thomas Grzesik, a vocational expert, described Plaintiff's past relevant work as a teller as a semi-skilled, light-exertional job generally, but testified that Plaintiff performed it at the medium-exertional level. R. at 52, 273. At the administrative hearing, the ALJ posed a hypothetical question to Mr.

Grzesik, describing someone of Plaintiff's age, education, and past work experience, who was limited to light exertional work, but could frequently balance and climb ramps and stairs; only occasionally stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to vibrations. R. at 53. Mr. Grzesik testified that the hypothetical individual could not perform Plaintiff's past relevant work, but that she had acquired the transferable skills of compiling and computing data pertaining to customer transactions and that those skills would transfer to the teller position as it was commonly performed. R. at 53, 273. Mr. Grzesik clarified his answer by stating that the hypothetical individual could perform the teller job as it generally was performed. R. at 53-54. He also testified that the skills would transfer to the jobs of cashier 1, Dictionary of Occupational Titles (DOT) # 211.362-010, a semi-skilled sedentary job; cashier/checker, DOT # 211.462-014; and cashier/courtesy booth, DOT # 211.467-010, a light job. R. at 54. According to Mr. Grzesik, there are approximately 5,800 such jobs in the region. R. at 54. These positions require a person to be on task ninety percent of the work day and would not allow more than six absent days per year. R. at 56-57. The vocational expert concluded that if Plaintiff's testimony was credible, then there would be no jobs she could perform. R. at 55.

## III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. See *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. See *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. See *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. See *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review."

*Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); see also *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

IV.     **Disability Standard**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and

the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); see also *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; see also *Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## V.     Analysis

The Plaintiff argues that the ALJ erred by failing to address medical treatment records from 2007, and consequently the ALJ's decision was not supported by substantial evidence and other evidence was incorrectly assessed. Defendant contends that the ALJ did not commit reversible error by disregarding the 2007 medical records and argues alternatively that any error was harmless. Plaintiff also maintains that dismissing Plaintiff's credibility was erroneous, because the ALJ did not review the full scope of recent medical treatment records. Plaintiff adds that the ALJ made an inappropriate assessment of her credibility by equating Plaintiff's ability to perform tasks of daily living to being able to work at a job. Finally, Plaintiff asserts that the hypothetical question posed to the vocational expert did not include all of Plaintiff's pertinent medical history, and thus the VE's opinion should be disregarded.

### A. Medical Treatment Records from 2007 (Exhibit 13B)

Plaintiff states that the ALJ's conclusion is inaccurate because the ALJ failed to address medical evidence from 2007. In effect, Plaintiff contends that the ALJ issued a rejection of the DIB application without reasoning, explanation, or analysis of the 2007 medical records supporting the claim. The ALJ must consider all the evidence, and the decision must be based on all of the evidence. See *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). "While an ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Perkins v. Massanari*, 2001 WL 34382041, at *13 (W.D. Wis. Aug. 22, 2001) (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)). "The ALJ's opinion must adequately articulate how the evidence was weighed so that this court may trace the path of his or her reasoning." *Id* at *10. For instance, "ignoring an entire line of evidence would fail this standard." *Perkins*, 2001 WL 34382041 at *10 (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). If the ALJ does not mention particular evidence in his opinion, the reviewing court may assume that the ALJ did not consider this evidence at all when making his decision. See *Perkins*, 2001 WL 34382041 at *12 (holding that the case must be remanded for further proceedings since the court was "unable to tell what weight the ALJ gave to [specific] evidence because he never mentioned it," and consequently the ALJ may have "overlooked this evidence entirely."); *Earnest v. Astrue*, 2007 WL 2904067, at *6 (S.D. Ind. Sept. 29, 2007) (remanding claim to the Commissioner on the basis that "meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence," which the ALJ did not do.).

As evidenced by the ALJ decision, there is no reference to Exhibit 13B or Plaintiff's medical treatment records from 2007 included in it. R. at 13-22. As Plaintiff notes, the medical records in Exhibit 13B consist of about eighty-five pages, which is almost half of the 210 pages of medical evidence in the record. R. at 94-179, 280-408. Additionally, the treatment records in Exhibit 13B constitute the only records of Plaintiff's medical treatment during 2007, which include treatment records from Dr. Schubert's office and diagnostic studies as well. Exhibit 13B included the EMG results which Dr. Schubert used to conclude that Plaintiff had lumbosacral neuropathy which "continues to interfere with gainful employment" and thus necessitates a finding of disability. R. at 95, 132, 149-50.

An ALJ is required to consider, and base his decision on, all of the evidence, not just select portions. See *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). The Commissioner's argument focuses on those portions of the evidence that, according to the Commissioner, support the ALJ's decision. However, the fact that the record contains some evidence that might support the ALJ's decision does not excuse the ALJ's failure to address other, significant evidence. *Myles*, 582 F.3d at 678. A decision that does not even mention highly pertinent evidence cannot be upheld. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The decision in this case fails to discuss forty percent of the medical evidence (R. at 16-20; see R. at 94-179, 280-408)—notably, evidence that encompasses treatment records during the year preceding the hearing.

The Commissioner acknowledges, as he must, that the ALJ "did not seem to recognize" that Plaintiff was treated by Dr. Schubert in 2007 (Def. Resp. at 11), but argues that the error was harmless. However, that argument is inconsistent with the legal requirements for Social Security decisions. The decision must consider all relevant evidence. *Parker*, 597 F.3d at 921. Defendant notes that the "evidence did not establish that Plaintiff was further functionally limited."

13

Defendant's Resp. at 12. However, these medical treatment records include Dr. Schubert's diagnosis of Plaintiff with lumbosacral neuropathy and Dr. Schubert's opinion that Plaintiff should be on disability, which is explicit evidence that Plaintiff is functionally limited. R. at 95, 132. Defendant also argues that because the objective diagnostic studies that Plaintiff underwent in 2007 were "entirely within normal limits," the ALJ's failure to address these other records is harmless error. While Defendant's observations may prove correct at the end of the day, the ALJ did not meet the standard articulated by the 7th Circuit, which demands that the ALJ at least "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Garcia v. Astrue*, 2008 WL 1771856, at *6 (N.D. Ind. Apr. 14, 2008) (quoting *Pope v. Shalala*, 998 F.2d 473, 481 (7th Cir. 1993)). As noted by the court in *Perez*, "ignoring an entire line of evidence would fail this standard." *Perkins*, 2001 WL 34382041 at *10 (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Therefore, despite the *possibility* that substantial medical evidence overlooked by the ALJ would have little or no influence on the ultimate decision, it still must be considered and addressed by the ALJ in his decision, especially if, as here, the evidence "contradicts the Commissioner's position." *Perkins*, 2001 WL 34382041 at *13.

The Commissioner also argues that Dr. Schubert's observation that Plaintiff's condition interfered with her employment and that she needed disability was not entitled to any significant weight. However, the ALJ did not reject Dr. Schubert's opinion; instead, he did not mention it. Thus, the Commissioner seeks to justify the decision based on grounds not articulated by the ALJ, and this is not proper. See *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

Additionally, the Commissioner's position that Dr. Schubert's opinion was not entitled to weight (because it was not supported by the medical evidence) disregards the fact that Dr. Schubert's October 30, 2007 opinion represents the only medical opinion rendered in light of the

2007 treatment records. Dr. Bordy examined Plaintiff and submitted his report in April 2006. The doctors who reviewed Plaintiff's records for SSA and opined as to her RFC did so in 2006. Thus, Dr. Schubert's expressed views that (i) Plaintiff had permanent lumbosacral neuropathy, (ii) which interfered with her employment, and (iii) that she needed disability stand alone as the sole medical opinion rendered in 2007 as to the significance of Plaintiff's condition overall.

It is crucial for the ALJ to evaluate all of the evidence together in order to comprehend the entire scope of the illness. See *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (holding that "the ALJ needed to consider the aggregate effect of this entire constellation of ailments—including those impairments that in isolation are not severe," in deciding to remand the case for further proceedings). On remand, the ALJ must examine all of the evidence from 2007 in Exhibit 13B, provide specific reference to that evidence in the record to support his assessment, and provide a logical bridge from the evidence to his conclusion.

### B. Credibility Determination

Plaintiff contends that the ALJ's reasoning was erroneous with respect to rejecting the Plaintiff's credibility because the ALJ did not consider Plaintiff's medical records from 2007. In response, the Commissioner contends that there is sufficient support for the ALJ's determination.

The Social Security Regulations provide that in making a disability determination the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. See 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. See *id.* The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably

could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. See SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

The Seventh Circuit has maintained a highly deferential standard of review regarding credibility: "a court should conclude that a credibility determination is patently wrong only when it 'lacks any explanation or support.'" *Ponton v. Astrue*, 2009 WL 2413927, at *4 (C.D. Ill. Aug. 4, 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. See *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Plaintiff maintains that because a substantial amount of the medical evidence was not weighed in the ALJ's opinion, the credibility determination was both incomplete and inaccurate. Indeed, the ALJ's determination as to Ms. Rapsin's credibility was one of the areas

affected by the ALJ's disregard of the 2007 treatment evidence, despite the Commissioner's arguments to the contrary. The decision itself states, more than once, that the ALJ considered treatment evidence in assessing Ms. Rapsin's credibility. R. at 17-20. However, the ALJ's decision as a whole disregards a significant portion of the available treatment evidence. Given the amount of evidence disregarded, this error cannot be overlooked in light of general deference due to the ALJ's credibility assessment. See *Myles*, 582 F.3d at 676. On remand, the 2007 medical records should be assessed prior to determining Plaintiff's credibility.

### C. Vocational Expert

The Seventh Circuit has maintained that "[h]ypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record." *Richardson v. Astrue*, 2009 WL 799543, at *5 (S.D. Ind. Mar. 23, 2009) (quoting *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)); see also *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) (deciding "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers."). If the vocational expert is not aware of all of the claimant's limitations, he may refer to jobs that the claimant cannot perform. *Kasarsky*, 335 F.3d at 543. According to the Commissioner, "[t]he ALJ's hypothetical question was proper because it included all credible limitations as found by the ALJ." Def.'s Resp. at 14. However, if the ALJ constructed the hypothetical question that he posed to the vocational expert with the same evidence that he used in formulating his opinion, not all of the medical evidence would have been included. Particularly, any conclusions drawn from Exhibit 13B would have been left out of the limitations of the hypothetical question. Thus, the hypothetical question did not encompass all of the relevant factors to be assessed in determining Plaintiff's eligibility for disability insurance

benefits. While the testimony of the vocational expert supports the ALJ's decision, in order to properly support an ALJ's decision, a vocational expert's testimony must be based on consideration of the claimant's actual functional limitations, as shown by the medical evidence. *Steele*, 290 F.3d at 942. There is no way to determine, in this case, whether the ALJ would have reached a different conclusion regarding Plaintiff's actual functional limitations if he had indeed considered all of the medical evidence. On remand, the hypothetical questions addressed to the vocational expert should take into account the entire scope of the evidence.

## VI. Conclusion

For the reasons set forth above, the Court concludes that the ALJ failed to sufficiently articulate his analysis of the evidence to allow the reviewing court to trace the path of the ALJ's reasoning. See, e.g., *Scott*, 297 F.3d at 595. An ALJ must give enough information for the reviewing court to consider his reasoning and be assured that all of the important evidence was properly considered. In this case, the ALJ erred in not considering and discussing the medical treatment records in Exhibit 13B—an error that, in turn, led to an incomplete and thus inaccurate assessment of Plaintiff's credibility and the posing of an imprecise hypothetical question to the vocational expert.

Plaintiff requests that the Court reverse the ALJ's decision and find that she is entitled to Disability Insurance Benefits under the provisions of the Social Security Act. However, an award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. This is not such a case. Here, the ALJ's opinion left out a substantial amount of objective treatment records which must be considered together with the rest of the evidence. Therefore, the Court grants Plaintiff's motion

for judgment on the pleadings [20] and remands this matter for further proceedings consistent with this opinion.

Dated: August 22, 2011

_____
Robert M. Dow, Jr.
United States District Judge